The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Jesus Leonardo Castillo-Martinez. Appeal number 19-1971. Attorney Romala, please introduce yourself for the record and proceed with your argument. Zanarboo Romala Good morning. May it please the Court. My name is Zanarboo Romala representing Mr. Castillo-Martinez. I would like to reserve two minutes for rebuttal. Attorney Romala Yes. Zanarboo Romala Thank you. In this appeal, we have raised two issues. I rest on the arguments in my brief as to the latter issue concerning jurisdiction and the undated notice to appear as the argument was raised for purposes of preservation. But as to the first issue, I would like to start with saying that Castillo was removed from this country on the basis of an invalid removal order and this is a legal reentry conviction that is currently being challenged before this Court cannot stand. Now, this removal order was invalid because it was based on a predicate offense that was classified as an aggravated felony subjecting Castillo to mandatory removal, but the Supreme Court's decision in Moncrief tells us now that the marijuana conviction did not qualify as an aggravated felony. Now, at the time of Castillo's removal hearing, Moncrief was pending before the United States Supreme Court. CERP had been granted and the oral argument in that case had already been held and a reasonably competent counsel would have been aware of this pending case and accordingly would have challenged the aggravated felon designation, but instead counsel in this case conceded that Castillo was removable based on the allegations in the NTA, which included only one basis of removability, the aggravated felon. Thus, counsel... Ms. Ramallah... Yes. Counsel... Well, one doesn't know why counsel made the concession, but First Circuit law at the time established that this offense was an aggravated felony. Now, maybe the Supreme Court argument provided some basis for a later attack on our decision, but at the time, the immigration judge would have been bound by our circuit precedent and therefore would have had no choice but to conclude this was an aggravated felony. So, isn't an inherent question here one about the retroactivity of our later recognition that our precedent at the time needed to be vacated or was no longer good law? It's absolutely correct that the immigration judge would have been bound by Jolse at the time, but if we look at this court's decision in Powell, they left a caveat about precedent. They specifically said advocating changes in recent precedent may occasionally be required of competent counsel, but it would take unusual circumstances, and the facts we have here should qualify as an unusual circumstance. I think we're going on two different tracks. You're pursuing the ineffective assistance, and I'm saying I don't see how there was prejudice or unfairness given the binding precedent in this circuit which bound both the immigration judge and the BIA. The argument we're advancing is if counsel had made the objection based on the pending Moncrief case, we wouldn't be talking about retroactivity at that point. No, I'm sorry. He could have made the objection, but circuit law nonetheless bound the agency at both levels. It wasn't until much later after the Supreme Court ruling, and I believe it might have been well after your client was removed from this country, that this circuit acknowledged the influence of the Supreme Court case. So, counsel and the immigration judge was bound by Jolse, but our argument is if counsel had made the objection, he then would have been able to make the same argument before the BIA. The BIA decision wasn't rendered until March 2013, which was about a month before the Moncrief decision came out. If he had raised this argument in front of the BIA, it probably would have been rejected because Jolse would have been still good law at that point, but then counsel could have... Well, the BIA, excuse me, isn't it true that the BIA had no authority to overrule First Circuit precedent based on an anticipation of what Moncrief would hold? Yes, that is correct. Okay, so let's assume, right, that the order of removal became final and your client was removed, and that all of the changes in the law that occurred later would have to be applied retroactively to undo the order of removal which you are now seeking to collaterally attack. I still don't think we have an issue here because we're talking... Moncrief was just a matter of statutory interpretation. Moncrief basically told lower courts what the statute always meant. Can I just make one point of clarification on the timing? Yes. Let's assume, as Judge Lynch is saying, that at the time the argument, if it had been made to the BIA, would have had to been rejected by the BIA. How long after the BIA ruling here did Moncrief come down? It was about a month afterwards. Okay, what would be the time for a petition for review to the BIA following a BIA decision? You would have 30 days to petition the First Circuit. Yes, so was a petition for review filed post the BIA decision or was that 30-day period over before Moncrief came down? The 30-day period was over before Moncrief. Okay, so then was there a petition for review to the First Circuit? There was not. And had there been a petition for review to the First Circuit, I presume that we wouldn't have a retroactivity decision because at that point the First Circuit would have been confronted with the petition for review facing the Moncrief decision, which would have been an intervening precedent, which would have required us to overturn Jolse, would be the idea, if I'm understanding it. Absolutely, that's the exact argument. Okay, all right. Does that then, I assume, though it's not quite framed this way, the ineffective assistance of counsel here isn't limited to the failure to raise it to the BIA. It's also got to be a failure to have raised it to the First Circuit and not filing a petition for review from the BIA decision. Yes, the ineffective assistance of counsel was, one, not raising it before the immigration judge, two, not raising it before the BIA, and then three, not asking for the petition for review. I know it's not quite posed this way, but now that I see it that way, at the time, by the time Moncrief had come down, had the time run for filing a petition for review? Yes, Moncrief came after the 30 days, but if a counsel... That 30 days for a petition for, isn't there a mechanism for having the BIA rehear a decision? There may be, but our argument is based on counsel seeking a petition for review. So, there was only a 30-day period, you only have 30 days after the BIA ruling to petition for review to the First Circuit? Yes. Yes, and by that time, the time clock had run. Yes. So, I guess then, to Judge Lynch's point, the ineffective assistance of counsel then is that had it been raised to the First Circuit prior to Moncrief coming down, by the time it got to the First Circuit, the First Circuit would have necessarily had Moncrief before it at the time it ruled on the petition for review. Is that the idea? Yes, that's the exact argument. There's no retroactivity issue. At least on your account of things. Yes. Yeah, because in the absence of the ineffective assistance of counsel, it would have just been reviewing the order of removal that wasn't, in a sense, totally final, because it was still subject to orderly review through the appellate process. That's absolutely correct, and this doesn't seem to be too much to ask of counsel, particularly even though Jolse was binding. Jolse was a 2008 decision. This removal hearing was in 2012, and even though Jolse was binding, reasonably competent counsel would at least check to see if the Supreme Court has entered the fray. Let me interrupt you there and ask if the judges have additional questions at this time. All right, you've reserved some time. I'm sorry, Chief Judge, I did have one question. There is a separate issue in the case, as I understand it, that under 1326D, there's a question of whether the way we're supposed to think about it is that the prejudice inheres in the finality of the removal order when otherwise it wouldn't have been final, and there is an alternative view that the standard for showing the entry of the order was fundamentally unfair so that you would get relief under 1326D itself, if I'm understanding it right. That seems to be the debate, and there's a question of whether you could show that, no, I'm sorry, whether you could show that you would get the discretionary relief 1326 allows, even if you could upset the removal order, because you're not guaranteed to have it upset. Is that right? Yes, the government has advanced the argument that we are required to show he would not have been granted discretionary relief, but our argument is that that is not the burden we have to meet. If we're looking at prejudice, we're looking at what the results have been. Let me just give you this example, then, and just work it through. Suppose we have this case, and we've got the exact same thing, a predicate conviction that's an aggregated felony, and you make your case about ineffective assistance of counsel. It's overturned in a decision within the time for review, so there's a good case to be made that ineffective assistance of counsel deprived you of a fair hearing in the review process, and therefore, that conviction which grounds the removal should be thrown out, but suppose it is undisputed there was another conviction that clearly qualified as an indisputable conviction that was not relied on the BIA, because it didn't have to rely on it, since it relied on the other one. In that instance, could you succeed in this proceeding, because you would have shown that the actual removal order should be thrown out, but there's no reason to think you would then get 1326 relief, or that you'd get discretionary relief as to removal, because there is a clear aggravated felony in place. Now, what are we supposed to do? Is your argument that even then, we have to go through the formality of making the BIA enter the order based on the new one, or is your argument here that this is a situation in which, however unlikely it might be, that actually the BIA would not continue with the removal, that there is at least a prospect that the BIA wouldn't? I think we're limited to what was alleged in the Notice to Appear, the charging document. No, no, Ms. Ramal, Judge Barron has put his finger on something which troubled the district court, also troubles me. We'll take it that the BIA only charged one of the offenses, and we will assume hypothetically that you could get that vacated, but there were other, frankly, even more serious drug offenses, and the district court took account of that and said, in essence, the agency would have just turned around and charged these other offenses, as to which there is no argument that they weren't aggravated felonies. As I understand First Circuit law, to show unfairness, you also have to show prejudice, and prejudice means you have to address the argument which convinced the district court that you could not show prejudice. So can you address that? Yes, prejudice meaning, in our eyes, that you would show you would not have been removed on the particular basis in that particular NTA. It is a charging document. It's too speculative at this point to determine what would have happened if the NTA had been amended. The proceedings could have been terminated, and the government would have been required to bring a new notice to appear. Even if the government was going to amend the NTA, there's a procedure that needs to be followed. It needs to be served properly. There's a form the government has to follow. That's true, but this is a guy with multiple drug distribution offenses. Isn't it unrealistic to think that if the agency wanted to remove him based on one set of drug convictions, it would ignore more serious drug distribution convictions and suddenly stop its efforts to remove him from the country? I don't think it's unrealistic to think that the government might not completely follow all procedures that would be required with a new NTA. Even if we were looking at discretionary relief, Castillo did not even get the opportunity to put forth below why he should have been granted discretionary relief. It wasn't on the table because- Is there a route, I guess I'm saying, given the other convictions that are in the record that the district court pointed to, is there a route under the immigration laws, assuming procedures that would be complied with if they were to pursue removal, is there nonetheless a route for a person with those prior convictions to be afforded some sort of discretionary relief such that they could have been allowed to remain in the country? Certainly. Castillo could apply for cancellation of removal. He met the other eligibility requirements. He was a legal permanent resident for the threshold amount of years. He had the continuous residency for the amount of years. What removed his eligibility for that was the aggravated felony. The point is that the alternative aggravated felony would equally remove his eligibility for that. That's what I'm wondering is, assume there's the other aggravated felony, is there any route for discretionary relief for an alien with that other valid aggravated felony? Judge Brand, if I could just clarify, when you're saying another aggravated felony, are you talking about hypothetically or you're saying there was one in this case? Well, if you're contesting that, I thought the district court pointed to the record of the other convictions to suggest others, yes. They did, but the district court did not make a finding that the other conviction was an aggravated felony. Thank you. I thought it was, I'm sorry, heroin distribution defenses. I'm sorry, in your brief, you don't present any argument that those other offenses would not have been aggravated felonies. Right, because there wasn't a finding below as to the other offense being aggravated. Yes, but you have to show no prejudice. Right, and our argument is showing no prejudice means showing you wouldn't have been deported on the only basis listed in the NTA. Last question. Did the government make an argument below that the other convictions were aggravated felonies and in consequence, your client would have been ineligible for discretionary relief if the removal had been predicated on those other convictions? The government did make that argument below that it was a New Hampshire conviction, was an aggravated felony. Was your sole response to that, it doesn't matter because the prejudice inheres in this conviction being the basis for removal? The argument below, trial counsel did address whether the New Hampshire conviction was an aggravated felony. The argument was the conviction was not because New Hampshire statute criminalizes a mere offer to sell. And that was not addressed by the district court. Exactly. So then it wasn't addressed on appeal because the district court focused on the prejudice element. Well, so what would just, I'm sorry, is that suggest that a possible outcome here is to vacate and remand for a finding on that point? I would say no, because we're still pressing forward with the argument that we're looking at what was alleged in the NTA. All right. Thank you. We're going to hear from Ms. Eisenstadt. Good morning. May it please the court, Karen Eisenstadt for the government. I'd like to just briefly respond to the last thing that Judge Barron and defense counsel have been discussing about the New Hampshire statute. So actually in United States versus Burkhart, this court considered that exact New Hampshire statute and whether it was a categorical match, the cell in the New Hampshire statute for distribution under federal law. And this court held that it was a categorical match. And the argument had been aired in that case that the New Hampshire statute could criminalize a mere offer to sell without the intent to carry out the actual sale. And the court concluded that that was not a proper interpretation of the New Hampshire statute. So I don't think under current law, there's any question that that New Hampshire conviction is in fact an aggravated felony. Did the government make that argument below? I'd have to double check the record. But my understanding is the government absolutely advanced the argument that the New Hampshire conviction was an aggravated felony that made this defendant subject to mandatory removal regardless. I'd like to briefly address the issue that had been raised and the defendant's motion to stay yesterday. So as stated in the government's response to that motion, the government has no objection to delaying the decision in this case pending the Supreme Court's decision in Palomar-Santiago. However, the outcome in Palomar-Santiago should have no effect on the outcome of this case for the reason I think the court already recognizes, which is that this case can be decided on the lack of prejudice alone. And that issue is not raised in the Palomar-Santiago case. So in that case, the problem three, the fundamental unfairness problem is outside the question presented that's before the Supreme Court. And actually, the issue of prejudice was not disputed by the government in that case, because that alien had been removed on the basis of DOI offense that was not an aggravated felony. But the government agreed that he was also further not eligible for removal at all. And thus, that he had, in fact, been wrongfully removed from the country. There was no basis for removal. So that... Ms. Eisenstadt, if I may, is the reason that the government has no objection to staying that he is incarcerated and going nowhere during this period? So the defendant, as the government sent in a notice to the court a couple weeks ago, the defendant has already been removed from the country. So from the government's perspective, there's no harm in waiting for Palomar-Santiago to be decided. However, this case can be decided on the basis of an issue that's not even raised in Palomar-Santiago. So it can also be decided without waiting for that decision. Could you just walk... Oh, I'm sorry. Go ahead. No, go ahead, Judge Barron. I'm just wondering if you could just walk me through the government's reason for thinking that the right view of prejudice, textually under the statute, is the one you're advocating for rather than the prejudice that is rooted in looking at the notice to appear charge itself. So the defendant's position is that the court should ignore the New Hampshire conviction, and he gets there by arguing that this court's review is limited to what was within the four corners of the notice to appear. So that position is wrong, and I'd like to bring out three reasons why the position doesn't make sense. First, it's flatly inconsistent with this court's reasoning and Sotomayor. So in that case, all that was alleged in the notice to appear was that the defendant's identity theft conviction was an aggravated felony, and he was removable on the basis of an aggravated felony. So similar to the situation here with the Massachusetts conviction. There, it was, again, also legally incorrect that it was an aggravated felony. However, the court did not say that's automatic prejudice, which is the defendant's position here, but rather set forth that D3 would require then going through the actual prejudice inquiry that the court set forth in Luna. The question then is whether the defendant would have been removed anyhow. And so based on that, it's clear that the prejudice inquiry does need to take into consideration that the government can freely amend a notice to appear within the same removal proceeding, and that does not trigger a new proceeding. Can I just question you about one phrase that you used? The question is whether he would have been removed anyway, I think is what you said. Are you sure the question isn't the likelihood of removal? Because I didn't see where the appellant's brief got into what his likelihood of not being removed was, and I'm trying to understand whose burden is whose. Right. Thank you for that clarification. So in saying would have been removed anyhow, I omitted the standard, which is that he has a burden to show that there's a reasonable likelihood that the outcome of the proceeding, the removal proceeding, would have been different. And the outcome of the removal proceeding in this case was that he was removed, so the reasonable likelihood is that he would need to show that he would not have been removed. And what do you understand the appellant to have said on that score? The appellant's position is that what the test actually is is different. The question is whether he would have been removed on the existing notice to appear, which he would not have been because that notice to appear has an error in it. But the defendant's position is fundamentally conflating error and prejudice, because it is understood there was an error in the original notice to appear, but it's a separate question whether he was prejudiced by that, and that looks at the outcome of the removal proceeding. And so just... Chief Judge Hart, I'm sorry if you were still... No, no, please. It seems like key to your position is that whatever would happen to this petitioner that would make up for the error would have to happen, I think you used the word, in the same removal proceeding. And so... Yeah, that's correct. So key to that is not that he would get a new notice to appear, it would just be an amendment to the existing notice to appear that would add this new felony conviction? I don't know that the specific administrative procedure aspect makes much of a difference here, because I don't think it's disputed that the government can amend a notice to appear in a proceeding, and that's the same proceeding. Can they do it as late as they would be doing it here? Yes. So the government can amend at any time during the removal proceeding, and that's set forth in regulations. So that's 8 CFR section 1240.10e, that at any time... That's true even on remand after a removal proceeding has ended favorably to the petitioner? I believe that's correct. There could be a motion to reopen, or in terms of the posture here, I think the prejudice question is what would have happened if he had challenged in the original removal proceeding that his Massachusetts conviction was an aggravated felony? And if he had made that challenge, at that point, the government easily could have amended the notice to appear to add the New Hampshire conviction was undisputed that that was part of his criminal record and was in evidence at the removal hearing. So there was just no question that that's within scope of a prejudice analysis. And I think what this court said in Luna about the prejudice analysis is helpful. So there, the court looked at the language the Congress had used in D3 about fundamental unfairness, and Congress had said the question is whether the entry of the removal order was fundamentally unfair. So this court's... Can I just ask you, I guess what's bothering me is this. Say the government knows at the time of the notice to appear that there's three different convictions that might qualify. It sounds to me that what you're suggesting is that the government could proceed seriatim. It goes with the first conviction, that goes all the way up to the Supreme Court, the government loses, comes back on remand, and they just then come in with the second one in the same proceeding. And then they go all the way up, and years later, they lose on that one, they can come in with the third. And there's no notion of the government having to timely charge them all at once? No, actually, this court confronted that exact issue on a direct review posture in DeFaria versus INS. So this was under... Before they were called notices to appear, they were called orders to show cause. And there, the court held that it's fine for the government to amend, to add charges that could have been conceivably charged at the outset, in that, in fact, that's a pretty common practice. So this court held there's no requirement that the government advance every conceivable basis for deportability in the original show cause order. And the reason is because that would unnecessarily complicate removal proceedings, because then you'd be litigating all of them when the government really only needs one basis for removal in order to remove the defendant. So this court held that, in fact, that that's perfectly fine as a matter of procedure, and I think it's very common. So to get back to what we had been discussing before in terms of why the defendant's narrow view of prejudice is incorrect, the defendant is basing that narrow view of prejudice on the Supreme Court's decision in SEC versus Chenery. But that... If the court is doing direct review of agency action, it should focus only on the grounds actually invoked by the agency. But this is a collateral attack. It is not direct review. So that principle simply doesn't apply. And third, the defendant is arguing that the court shouldn't consider hypothetical removal orders and should be bound by the actual removal order that was entered here. But what the defendant is doing is ignoring that prejudice is inherently a counterfactual question. That's the standard that this court stated in Luna and Sotomayor. Absent the error, is there a reasonable likelihood the outcome of the proceeding would have been different? We're not bound by looking in prejudice only at how the original proceeding progressed, because here it is, in fact, a collateral attack and not direct review. And finally, the defendant complains in his reply brief that the analysis of reasonable likelihood is simply too speculative, and thus the court shouldn't conduct that analysis. But that also cannot be correct, because this court actually did that exact analysis in Sotomayor. So there's nothing about the analysis that is inherently impossible to do. One last question. Assume the substitute or amended order is now based on the heroin conviction, and assume that is, per Burkhart, an aggravated felony. Is there a route for a person with such a prior felony to be able to get discretionary relief from removal? I thought there were certain avenues that are still available, even to such a person. So just to clarify, the New Hampshire conviction was for conspiracy to sell oxycontin, which is, of course, also a controlled substance, but is not heroin. To respond to your question, no, there is no route. So if a defendant has an aggravated felony, that defendant is subject to mandatory removal. That means discretionary relief is off the table. That alien is not eligible to apply for discretionary relief. However, there are forms of non-discretionary relief. But here, the alien did apply for them and was rejected as a factual matter, and that's not an issue in this case. So he had applied in this case for deferral of removal under the Convention Against Torture. That, as a factual matter, was denied and is not an issue here. If he had had a fear of persecution on a protected ground, there might have been an issue about withholding. Nothing in the record shows the petitioner developed any argument about how, if there were an aggravated felony, he nonetheless would be eligible for some sort of relief. No, no. That argument wasn't made, and I think, as a matter of law, would not be correct. Judge Lynch, Judge Barron, further follow-up? No, thank you. Thank you, Ms. Eisenstadt. Ms. Romala, you have two minutes. Ms. Romala? Attorney Romala, can you hear me? Yes. Okay. Thank you. Welcome back. Oh, thank you. I first wanted to address something the government said about the Sotomayor notice to appear. She had mentioned that there was only one aggravated felony listed there, and there was actually two. There was a separate one for a, excuse me, false statement. On a passport application. So it is different from this particular case, where we're only looking at one particular offense, one aggravated felony. And in respect to her comments about Luna, in Luna, there was a request for 212C discretionary relief. So when you're looking at Luna, you're looking at the entire proceeding there, and it included that application for discretionary removal. So if you're going to look if the result would have been different, you're going to Would that application have been granted? But here, there was never a request for discretionary relief. So our prejudice analysis necessarily will not be the same. We're only looking at the NTA basis of aggravated felony, which- How would you address the point that the government's making that for a collateral attack, we should look at the proceeding and the outcome of the proceeding? And the proceeding could include an amended notice to appear, an amendment to the charge that would include the OxyContin conviction. So even though it's not in the notice to appear, it could be amended to be added, and then it would be the same proceeding. And that's the proceeding you're attacking. I think there is a limit to how far we're going to go as to what could have occurred had the error been removed. And I think, too, it's merely conjecture to say what the government would- would the government have amended. Again, we don't know if that would have been the case. The proceedings could have been terminated altogether, and the government would have start- have started anew. What we do know is that there is a single NTA with a single basis for removal. Had that- had counsel made the appropriate objections, Castillo- Castillo-Martinez would not have been subject to mandatory removal. And that's the prejudice analysis that we should be limited to at this point. In terms of deficiency and prejudice, based on the arguments we have made in this oral argument, we'd like to assert that the removal order was invalid. Because of that prior invalid removal order, Castillo-Martinez's conviction for illegal reentry cannot stand, and the conviction should be overturned. Thank you. Thank you, counsel. That concludes the argument in this case. Attorney Ramallah and Attorney Eisenstadt, you should disconnect from the hearing at this time.